GAUTHIER v. ST. JOHN THE BAPTIST PARISH SCHOOL BOARD, ET AL.

---

(January 17, 1927. Opinion and Dercee.)
(January 31, 1927. Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Education—Par. 19.**

A teacher can not be appointed in the public schools of the state without a certificate from the State Board of Education.

2. **Louisiana Digest—Education—Par. 6, 19.**

Under Section 20 of Act 100 of 1922, the parish school board must select teachers from nominations made by the

parish superintendent, and this authority cannot be delegated to the superintendent.

**3. Louisiana Digest—Obligations—Par. 51.**

Contracts made in violation of a prohibitory statute are void.

Appeal from the Twenty-eighth Judicial District Court, Parish of St. John the Baptist, No. 814. The late Hon. H. M. Gautier, Judge.

Action by J. Folse Gauthier against St. John the Baptist Parish School Board, et al.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

P. E. Edrington, Jr., of New Orleans, attorney for plaintiff, appellant.

C. A. Buchler, of New Orleans, attorney for defendant, appellee.

JONES, J. This is a suit by J. Folse Gauthier against the St. John the Baptist Parish School Board and Lubin F. Laurent, its superintendent and secretary, in solido, for one thousand and eighty and 00-100 ($1080.00) dollars, claimed to be due under an alleged contract of employment, made between the said Gauthier and the School Board through its superintendent and secretary, whereby plaintiff was employed to teach school as principal of the Frisco School at one hundred and twenty and 00-100 ($120.00) dollars per month for a term of nine months.

The plaintiff alleges that he was first offered by letter the position of principal of the Garyville School at a salary of one hundred and thirty-five and 00-100 ($135.00) dollars per month, but subsequently was informed by letter from Superintendent Laurent that in looking over his application he, Laurent, found that plaintiff had no actual experience in teaching and, therefore, could not be placed. A smaller school was offered him at the reduced salary of one hundred and twenty ($120.00) dollars per month, for which the superintendent enclosed a contract, providing for the principalship of the Frisco School. These letters are attached to plaintiff's petition.

Plaintiff further alleges that upon receipt of the letter and contract, and in the presence of two witnesses, he signed his acceptance of said contract, and on August 22, 1922, he mailed said accepted contract to Lubin F. Laurent, superintendent, addressed to Edgard, Louisiana, and that in due course said contract was received by said School Board, and the same was in possession of said board; that, in compliance with said contract, he left his home and went to St. John parish and secured a boarding place near the Frisco School, and that on September 9, 1922, at a Teachers' Institute, he was verbally notified by Lubin F. Laurent, superintendent, that he had been transferred to the Lucy School, on the opposite side of the Mississippi river; that he protested that this was a violation of his contract, because the Lucy School was an inferior school in an undesirable locality, and refused to accept said transfer.

He further alleges that he is informed, and believed that after his contract was received by Mr. Laurent, that the superintendent entered into a second contract with A. E. Work for the same position (principal of the Frisco School).

That, as a result of the violation of said contract, he is entitled to one thousand and eighty ($1080.00) dollars, salary that he would have earned under said contract for the term of nine months from the St.

John Parish School Board; and if the court finds that Laurent was unauthorized to contract with plaintiff, then that Laurent be individually held liable for said amount.

Laurent filed an exception of no cause or right of action.

The record is silent as to what action the court took with reference to this exception, and no judgment of any kind appears to have been rendered thereon.

The School Board and Laurent filed a joint answer. The School Board denied generally the allegations of plaintiff and specially denied that Laurent was authorized to make any offer of employment to the plaintiff herein, and if such offer of employment was made that same was without right of authority insofar as the School Board was concerned, and averred that the contract referred to by plaintiff was never returned or received by it, and, in fact, that no contract had ever been made with the plaintiff by the School Board to teach at the Frisco School. It admitted that at the Teachers' Institute held on Sepember 9, 1922, plaintiff was notified that the School Board had accepted his application to teach in the schools of St. John parish, and that he had been assigned to the Lucy School, but denied that there was any violation of any contract, because the School Board was the only body authorized by law to enter into any contract for the employment of teachers, and the superintendent of schools was never at any time authorized to enter into contracts with teachers, and that the sole authority of the superintendent of schools was to recommend the appointment of teachers to the School Board; that the School Board may, or may not, employ the parties thus recommended, but may, under the law, employ parties who are not recommended by the parish superintendent.

The School Board further answered that the only school to which the plaintiff was ever assigned was the Lucy School; that the application filed by plaintiff did not designate any particular school at which he desired to teach, and that, acting upon said application, the board assigned plaintiff to the Lucy School, as it had a right to do, and it particularly denied that it at any time contracted with plaintiff to teach at the Frisco School or any other school except the Lucy School.

It further answered that the superintendent was merely authorized to receive applications from various parties who had decided to teach in the various schools located in the Parish of St. John the Baptist, but that the superintendent was without right or authority to contract with anyone to teach at the various schools; that the right to accept the application is, under the law, vested exclusively in the School Board, and that the only action taken on plaintif's application to teach was to assign him to the Lucy School; that plaintiff, having refused, failed and neglected to accept said appointment, it was necessary for the board to designate another teacher in his place, and that, therefore, there is no liability for any breach of contract as between the board and plaintiff.

Defendant, Laurent, denied all liability.

There was judgment against the plaintiff and in favor of the School Board and Laurent, rejecting his demand as to the board and nonsuiting him as to Laurent, and from this judgment plaintiff has appealed.

Plaintiff's evidence consists of his own testimony and documentary evidence, together with the testimony of A. E. Works, a fellow-teacher. Plaintiff swears that, on August 16, 1922, he received a letter from

Mr. Laurent, superintendent of schools of St. John the Baptist parish, offering him the principalship of the Garyville School at one hundred and thirty-five ($135.00) dollars per month; that he replied, accepting the position, and that on the 22nd of the same month he received another letter from the superintendent advising him that in looking over his application he found that plaintiff had had no actual experience and, for that reason, he could not give him the Garyville School at such a salary, but that he had a three-room school that he could give him at one hundred and twenty ($120.00) dollars per month, and enclosing a contract for him to sign.

He testified that the letter contained a contract in printed form, duly signed by Superintendent Laurent, covering principalship of the Frisco School in the Sixth Ward of the Parish of St. John the Baptist at one hundred and twenty ($120.00) dollars per month, for a nine months' term; that, after making inquiry concerning the location and character of the Frisco School he signed the contract at Bordelonville in front of his mother and brother-in-law, and returned it to Mr. Laurent by mail, addressed to him at Edgard.

The mother and brother-in-law, however, were never called as witnesses to substantiate this statement.

He further testified that he was subsequently notified to appear at a Teachers' Institute to be held at Reserve, September 9, and that at that time he was then notified verbally for the first time by Mr. Laurent that he had been assigned to the Lucy School.

Gauthier testifies at page forty of the transcript that at the time he made application to be appointed as a teacher in the St. John schools he did not have a first-grade certificate of the State Board of Education, but that he had a diploma of the State Normal School, which gave him the right to teach in any elementary school in the state, and he could get it if it was needed. Though he admitted that his Normal diploma was not a certificate, he contended that it was better than a certificate.

There is a first-grade certificate in the record, dated June 19, 1922; it does not appear to have been filed by the clerk of court, either offered in evidence, or identified in any part of the transcript and, therefore, it cannot be considered by the court. There is also a diploma in plaintiff's name from State Normal School, dated May 29, 1922.

The plaintiff also admitted that he had no certificate of any kind from the State Board of Education on June 11, 1923.

Plaintiff's other witness is Mr. A. E. Works, the teacher who was assigned to the Frisco School, who swears that at the Teachers' Institute referred to in Mr. Gauthier's testimony, he met plaintiff for the first time; that Mr. Laurent was trying to get either the witness or the plaintiff to withdraw from their contract and go to the Lucy School, and that he stated in the presence of the witness that Mr. Gauthier's contract referred to the Lucy School; that Mr. Laurent said that he had made a mistake and had assigned both him and the plintiff to the Frisco School and wanted one of them to take the Lucy School, and that the witness told Laurent that he would go to Lucy under certain conditions, one of which was that he was to get an increase of fifteen ($15.00) dollars per month in salary.

The record contains the original letters referred to in the testimony and the writ-

ten application signed by the plaintiff, in which he states that he is open to any appointment in the Parish of St. John the Baptist. However, he failed to answer the questions contained in the printed application form as to the grade of his certificate, the date of the certificate and the authority from which it issued to him.

A printed contract signed by A. E. Works, marked P-5, is also in the record, in order to prove that the contract signed by the plaintiff was identically the same as the contract of Mr. Works, except that the blanks had been filled to conform to new agreement. There is also in the record a general notice to the teachers of the date of the opening of the schools on September 11, 1922, and of a Teachers' Institute to be held on September 9, 1922, two days prior to the opening.

The teachers are advised in this notice that they must hold valid teachers' certificate issued by the State of Louisiana, with a notation in lead pencil, "your school has been changed to the Lucy School. Lucy is just below Edgard and can be reached by the T. & P. at the Edgard station.  L. F. L."

There is also in the record the graduation certificate of the plaintiff from the State Normal College, dated May 29, 1922, which was offered in evidence, and a first-grade certificate, dated June 18, 1922, issued by the state superintendent of education, which was never offered.

The minutes of the School Board of St. John the Baptist Parish, dated September 5, 1922, show that Mr. Gauthier was appointed to the Lucy School, Mr. Works to the Frisco School.

Mr. Abadie, the president of the St. John School Board, with a witness for the defendant, testified that he knew nothing about a contract between Mr. Gauthier and the School Board; that the School Board had, on July 6, passed a resolution authorizing the superintendent to sign contracts with teachers, after he had furnished a list of different teachers for the different schools and after the board had approved the list; that Mr. Laurent had no general authority to make any contract with the teachers without first presenting their names to the School Board for approval, and that the only action of the School Board relative to the plaintiff's application to teach was taken by the School Board at its meeting on September 5, when plaintiff was assigned to the Lucy School; that the School Board at no time entered into any contract with Mr. Gauthier to teach at the Frisco School.

Mr. Abadie's testimony is corroborated by Mr. Alexander, vice-president of the School Board, who testified that the usual way of engaging teachers was by sending them a blank application to fill, which is then approved. Only then the superintendent is authorized to sign the contract, and the plaintiff was never employed by the Board to teach at the Frisco School, but that he was assigned to the Lucy School.

The testimony of Mr. Abadie and Mr. Alexander is further corroborated by Mr. C. J. Tassin, another member of the School Board, who testified that the superintendent was never authorized to make any contract with teachers without the consent and approval of the board. Upon the trial of the case there was offered in evidence a resolution of the School Board, dated July 6, 1922, authorizing the superintendent to employ teachers for the coming year.

Lubin F. Laurent, the joint defendant in this case, who was called as a witness under the cross-examination individually

and as secretary of the School Board, testified that he wrote the letters filed in the record, but denied that he ever sent the plaintiff any signed contract; that the blank form of contract which he enclosed to Mr. Gauthier was never returned to the board or to himself by Mr. Gauthier. He admitted that he had sent a notice to Gauthier, the plaintiff, to come to Reserve to the Teachers' Institute, and that in response thereto Gauthier appeared, and he then explained to him that he had been notified that the school to which he had been assigned was the Lucy School and not the Frisco School.

Laurent denied that he admitted to Gauthier and Works that he had two contracts signed for the Frisco School, and said that he notified Gauthier to come to the Teachers' Institute, because in Gauthier's application he had stated that he was open to any appointment in the parish.

The record contains much evidence upon disputed questions of fact, but we do not find it necessary to pass upon the questions, because in our opinion the law clearly prohibits plaintiff's recovery.

The controlling law in the case is found in Act 100 of 1922, which prescribed in detail the duties of Parish School Boards.

The following parts of this act are pertinent:

(Sec. 8.) "The State Board of Education shall have entire charge of the examination and certification of public school teachers."

(Sec. 20, Pars. 1 and 2.) "The Parish School Board shall determine the number of schools to be opened, the location of the schoolhouses, the number of teachers to be employed, select such teachers from nominations made by the parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent. The board shall have authority to employ teachers by the month or by the year, and to fix the salaries of the teachers. The board shall see that the provisions of the state school laws are complied with.

"Each school board is authorized to make such rules and regulations for its own government, not inconsistent with the law or with the regulations of the Louisiana State Board of Education, as it may deem proper. The regular meetings of each board shall be held in the first week of January, April, July and October, on such day of the week as each board shall select, and it may hold such special or joint meetings as the board may determine or as occasion may require.

(Sec. 42) "All teachers' certificates are revocable by the State Board of Education upon satisfactory evidence that the holders are incompetent, unworthy or immoral."

(Sec. 49.) "No person shall be appointed to teach without a written contract for the scholastic year in which the school is to be taught, and who shall not hold a certificate, provided for by this act, of a grade sufficiently high to meet the requirements for the school, and it is made the duty of the parish superintendent of schools to ascertain definitely before contracting with a teacher that such teacher holds a certificate issued by the Louisiana State Board of Education."

(Sec. 56.) "Teachers now holding certificates which are in force and which were heretofore issued as the result of an examination held under the authority of law shall not be required to undergo an examination under the provisions of this act, but such certificates are continued in force for their respective grades and for the time provided for goes into effect no person shall be appointed as teacher in the public schools of the state unless he or she holds a proper certificate."

It is thus seen that the law is mandatory to the effect that the Parish School Board shall select teachers from nominations made by the parish superintendent, and we do not believe that this duty can be delegated to the parish superintendent.

If this official did send the purported contract signed by him to plaintiff herein (a fact upon which the proof is by no means conclusive) and if plaintiff did sign and return the document, it can have no legal significance, because it is violative of Section 20 of the School Law.

Although plaintiff did not have the certificate of the State Board of Education, which is specifically required by Sections 49 and 52 above quoted, he contends that he has the equivalent, namely, a diploma from the State Normal College, and this document which was offered in evidence by plaintiff does say that "it entitles the holder to a State Teacher Certificate". To sustain this contention would be to violate the whole tenor of the act and permit the parish superintendent to substitute his will for that of the legislature, thereby nullifying the specific prohibition of Section 56, which reads: "After this act goes into effect, no person shall be appointed as teacher in the public schools of the state, unless he or she holds a proper certificate."

The legislative intent must be taken as expressed in the words which the legislature has used.

State vs. McElroy, 44 La. 796, 11 South. 133. "Where the law is clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing the spirit."

Gooden vs. Lincoln Parish, 122 La. 75, 48 South. 196.

Flanagan vs. New Orleans, 9 Orleans Appeal 19.

Where the law is clear in its provisions it cannot be changed by a ruling of court.

Conery vs. Creditors, 113 La. 420, 37 South. 14.

For the above reasons the judgment is affirmed.